UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KENNETH JAMES HARRIS,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

    Defendant.

CASE NO. 11cv5569-BHS-JRC

REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT

NOTING DATE: June 8, 2012

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (<u>see</u> ECF Nos. 12, 15, 17).

The ALJ in this matter failed to provide specific and legitimate reasons for her failure to credit fully an examining doctor's opinions regarding plaintiff's cognitive and social limitations following a traumatic brain injury. In doing so, the ALJ failed to

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 1

discuss significant probative evidence supporting the examining doctor's opinions. Therefore, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

BACKGROUND

Plaintiff, KENNETH JAMES HARRIS, was forty six years old on his amended alleged date of disability onset of March 31, 2006 (Tr. 11, 22, 39, 169). Plaintiff has years of work experience as a machinist and caregiver, as well as work history as a janitor and construction laborer (Tr. 21, 200, 347). On March 31, 2006, plaintiff suffered a traumatic brain injury (see Tr. 13).

According to one of plaintiff's treatment records from April 19, 2006,

> [plaintiff] 46 yr old male had an alcohol withdrawal seizure on 3/31/06 and apparently fell on his deck, lacerating his forehead on an iron railing. He was not found for about 5 hours at which point he was airlifted to Harborview due to the severity of the laceration, blood loss, and small subdural hemorrhage in right middle cranial fossa. [He was] hospitalized for 6 days, [and] discharged on Carbemazepine as prophlaxis for seizures.

(Tr. 457).

In addition to suffering a hemorrhage around the interior boney concavity in the middle of his skull (cranial fossa), according to plaintiff's initial CT scan, plaintiff also suffered from a "slight amount [of] right frontal and probably slight hemorrhage in the interhemispheric fissure" (Tr. 493). Subsequently, a CT scan performed on August 3, 2006 indicated no evidence of masses, bleeds or infarcts in plaintiff's brain (Tr. 478). His scan results were assessed as no longer demonstrating evidence of acute brain injury at that time (id.).

## PROCEDURAL HISTORY

Plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits on May 23, 2006 alleging disability onset of February 22, 2006 (Tr. 11, 169-90). His applications were denied initially and following reconsideration (Tr. 11, 90-93, 96-102, 110-21). Plaintiff's requested hearing was held before Administrative Law Judge Laura Valente ("the ALJ") on December 3, 2009 (Tr. 32-81). At this time, he amended his alleged onset date to the date of his brain injury, March 31, 2006 (Tr. 11, 39). On February 10, 2010, the ALJ issued a written decision in which she found that plaintiff was not disabled pursuant to the Social Security Act (Tr. 8-23).

On June 15, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-5). See 20 C.F.R. § 404.981. In July, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision (see ECF Nos. 1, 3). Defendant filed the sealed administrative transcript regarding this matter ("Tr.") on October 5, 2011 (see ECF Nos. 9, 10). In his Opening Brief, plaintiff presents the following issues for this Court's review: whether or not the ALJ (1) gave specific and legitimate reasons for rejecting the opinions of examining psychologist, Dr. Norma Brown ("Dr. Brown"); and (2) gave sufficient reasons for rejecting the lay testimony of plaintiff's father, Mr. Charles Harris ("Mr. Harris") (ECF No. 12, p. 1). Plaintiff requests a remand for an award of benefits, or alternatively, a remand for a *de novo* hearing and new decision (id. at 2).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole,

weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 980 (1996) (per curiam) (*quoting* Andrews, supra, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of SSA, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing* SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (other citation omitted)); see also Molina v. Astrue, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. April 2, 2012) (Dock. No. 10-16578); Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." Stout, supra, 454 F.3d at 1054 (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. Molina, supra, 2012 U.S. App.

LEXIS 6570 at *24-*26, *32-*36, *45-*46; see also 28 U.S.C. § 2111; Shinsheki v. Sanders, 556 U.S. 396, 407 (2009); Stout, supra, 454 F.3d at 1054-55.

## DISCUSSION

1. <u>The ALJ failed to evaluate properly the medical evidence by failing to provide specific and legitimate reasons for rejecting the opinions of examining psychologist, Dr. Norma Brown ("Dr. Brown").</u>

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (*citing* Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, supra, 157 F.3d at 725 (*citing* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. Reddick, supra, 157 F.3d at 725 (*citing* Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir.

1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." Id. (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)).

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, supra, 81 F.3d at 830 (citations omitted); see also 20 C.F.R. § 404.1527(d). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. Lester, supra, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (*citing* Magallanes, supra, 881 F.2d at 752). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." Van Nguyen v. Chater, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing* Lester, supra, 81 F.3d at 831); see also 20 C.F.R. § 404.1527(d)(2)(i) (when considering medical opinion evidence, the Commissioner will consider the length and extent of the treatment relationship).

According to Social Security Ruling ("SSR") 96-8p, a residual functional capacity assessment by the ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5 at *20.

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 7

Dr. Brown examined plaintiff on multiple occasions and performed multiple mental status examinations of plaintiff (Tr. 408-20, 523-35, 576-97, 647-55, 678-90). For example, on May 4, 2006, she observed plaintiff's inability to recall more than one out of three items following a five-minute delay and opined that plaintiff suffered from mild limitations in his ability to understand, remember and follow simple instructions (see Tr. 410, 412). Dr. Brown also indicated her opinion that plaintiff suffered from moderate limitations in his ability to learn new tasks and in his ability to exercise judgment and make decisions (Tr. 410).

On August 6, 2007, plaintiff again demonstrated an inability to remember three words after a five minute delay (see Tr. 582). At this time, Dr. Brown evaluated plaintiff with the RBANS test (Repeatable Battery for the Assessment of Neuropsychological Status) (Tr. 587). Plaintiff's raw test scores are listed, as are plaintiff's percentile rankings (id.). For example, plaintiff scored below the tenth percentile on the immediate memory subtest, the attention subtest and the delayed memory subtest (see id.). At this evaluation, Dr. Brown opined that plaintiff suffered from severe limitations in his ability to learn new tasks and suffered from marked limitations in his ability to exercise judgment and make decisions (Tr. 579). The Court notes that these opined levels of limitation are greater than those opined by Dr. Brown on May 4, 2006 (see Tr. 410). In the section in which Dr. Brown is asked to describe the "basis for each rating in this section," Dr. Brown hand wrote the words "see RBANS scores" (Tr. 579).

Similarly, on June 16, 2008, Dr. Brown observed that plaintiff was able to recall only two out of three words after a short delay (Tr. 651, 654; see also Tr. 527, 582). Dr.

Brown opined that plaintiff suffered from marked limitations in his ability to learn new tasks and in his ability to exercise judgment and make decisions (Tr. 649). In the narrative section, in which Dr. Brown was asked to describe the basis for this particular set of ratings, Dr. Brown again hand wrote onto the form: "see RBANS scores" (id.; see also Tr. 647). Dr. Brown appears to have interpreted plaintiff's RBANS test results as indicating that he had a problem with sustained attention and long term memory (see Tr. 649).

On April 27, 2009, Dr. Brown observed that plaintiff again was unable to recall all three words that were presented initially, following a delay (Tr. 682). She also noted that plaintiff was complaining about memory problems (Tr. 680). Again, Dr. Brown opined that plaintiff suffered from marked limitation in his ability to learn new tasks and in his ability to exercise judgment and make decisions (id.). Dr. Brown indicated that these ratings were based in part on plaintiff's subjective report and also indicated that her opinion regarding plaintiff's similar marked memory deficit was based in part on plaintiff's RBANS scores (id.; see also Tr. 579, 678 ("See RBANS Scores")).

The ALJ included the following discussion in her written decision regarding the opinions of Dr. Brown:

> Dr. Brown's opinions are inconsistent with the bulk of her objective findings, which show the claimant to be cooperative, with normal attention, and performance on Trails A and B within normal limits. She also provided no objective basis for the opined worsening in the claimant's condition. For example, in support of the cognitive limitations she assessed in July of 2007, she noted "see RBANS score" (internal citation to 17F). In June of 2008, she noted, "see RBANS score, says he's doing worse" (internal citation to 31F). It appears that she based her opinions largely on the claimant's self-report, which, as detailed above,

has not been consistent. For these reasons, the undersigned gives the
opinions of Dr. Brown little weight.

(Tr. 20).

First, the ALJ found that Dr. Brown's opinions were inconsistent with the bulk of Dr. Brown's objective findings, yet the ALJ failed to mention many of Dr. Brown's objective findings, such as plaintiff's poor performance on simple memory tests, i.e., to remember three words after a five minute delay (see Tr. 410, 412, 527, 582, 651, 654, 682). The Court already has discussed some of plaintiff's results regarding memory tests, see supra, section 1.

In defendant's response brief, the Commissioner's counsel provided his own interpretation of plaintiff's mental status examination results and informed the Court that plaintiff exhibited "normal" memory in October, 2006; August, 2007; and June, 2008 (see Response Brief, ECF No. 15, pp. 6-7 (*citing* Tr. 20, 527-28, 582, 586, 651, 655-56, 682-83). It appears from the record that counsel's conclusion is not supported by medical evidence, as plaintiff demonstrated objective evidence of impaired memory on every one of these occasions cited by counsel and it does not appear that any doctor opined that plaintiff's memory on these occasions was "normal" (see Tr. 527 (October, 2006: plaintiff able to recall only two out of three words following both a five and a thirty minute delay)); Tr. 582, 587 (August, 2007: plaintiff could not recall all three words after a five minute delay and demonstrated performance on immediate and delayed memory RBANS subtests below the tenth percentile); Tr. 651, 654 (June, 2008: plaintiff was able to recall only two out of three words after a short delay)). Similarly, although counsel

cited the administrative record to support defendant's position that plaintiff's mental status examination findings "showed largely normal memory," the cited pages include objective evidence of plaintiff's inability to remember three words after a short delay on April 27, 2009 (see Response Brief, ECF No. 15, pp. 6-7 (citing Tr. 682-83); see also Tr. 682 (plaintiff recalled only two out of three words after a delay)). Based on a review of the relevant record, the Court is not persuaded by counsel's medical assessment of plaintiff's memory abilities and lack of cognitive limitations.

An ALJ must explain all significant probative evidence that is rejected: she may not disregard a doctor's opinion by concluding that it is not consistent with objective findings when the objective findings that support the doctor's opinion are not mentioned. See Vincent, supra, 739 F.2d at 1394-95 (*quoting* Cotter, 642 F.2d at 706-07) (the ALJ must explain why "significant probative evidence has been rejected"). When reviewing an ALJ's decision, the Court will "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" See Sandgathe, supra, 108 F.3d at 980 (*quoting* Andrews, supra, 53 F.3d at 1039).

Here, Dr. Brown consistently and on five separate occasions, recorded objective evidence that plaintiff suffered from limitations in his ability to remember words (see Tr. 410, 412, 527, 582, 651, 654, 682). The ALJ failed to mention any of these objective findings by Dr. Brown before concluding that Dr. Brown's opinions were not consistent with the bulk of her objective findings. Based on the relevant record, the Court concludes that this finding by the ALJ is not supported by substantial evidence in the record as a whole. See Magallanes, supra, 881 F.2d at 750.

Similarly, the ALJ found that Dr. Brown "provided no objective basis for the opined worsening in the claimant's condition" (Tr. 20). However, as already discussed by the Court above, Dr. Brown administered the RBANS test in August, 2007 (see Tr. 587). In addition, although Dr. Brown includes plaintiff's self-report in some of her indications regarding the basis of her findings, Dr. Brown specifically indicated more than once that the basis for her opinions regarding plaintiff's increased degree of limitation was plaintiff's RBANS scores (see Tr. 579, 649; see also Tr. 678). The ALJ has not cited any evidence for her apparent determination that the RBANS is not an objective test but is based on an examinee's subjective complaints.

The Court notes that despite defendant's contention that the "record contains only Dr. Brown's interpretation of the underlying test results" for the RBANS test, the record actually contains plaintiff's raw scores, including his 72 on the attention subtest, which placed him in the 3rd percentile, and 75 on the delayed memory subtest, which placed him in the 5th percentile (Response Brief, ECF No. 15, p. 8; see also Tr. 587). Defendant questions whether or not plaintiff's subjective complaints "drastically influenced the test results," however there is no indication in the record that this occurred or that the RBANS is anything other than an objective test (Response Brief, ECF No. 15, p. 8). Cf. Cherisse McKay, Joseph E. Casey, Jeffrey Wertheimer and Noman L. Fichtenberg, *Reliability and Validity of the RBANS in a Traumatic Brain Injured Sample*, 22 Archives of Clinical Neuropsychology 91, 91-92 (January, 2007) (the RBANS has been found "to demonstrate strong convergent validity with other neuropsychological measures") (listing examples of independent verification research studies). The written decision by the ALJ

suggests that the ALJ likewise assumed that the RBANS test results were based on plaintiff's subjective complaints, as discussed further below (see Tr. 20).

The ALJ found that Dr. Brown "provided no objective basis for the opined worsening in the claimant's condition" and then the ALJ proceeded to delineate the occasions on which Dr. Brown indicated that her opinion was based on plaintiff's RBANS test scores (Tr. 20). The ALJ also indicated that Dr. Brown's reliance on plaintiff's RBANS test scores supported the ALJ's conclusion that "[i]t appears that she based her opinions largely on the claimant's self-report" (id.).

Although an ALJ may make logical inferences based on the evidence, she may not rely on summary conclusions without a basis in the evidence. See Magallanes, supra, 881 F.2d at 750 (in order to survive judicial review, an ALJ's findings must be based on substantial evidence); see also Sample, supra, 694 F.2d at 642 (*citing* Beane v. Richardson, 457 F.2d 758 (9th Cir. 1972); Wade v. Harris, 509 F. Supp. 19, 20 (N.D. Cal. 1980)). Here, the ALJ appears to have assumed that the RBANS was not an objective test without citing any evidence to support that assumption. If the ALJ did not understand what the RBANS test entailed or if the ALJ found Dr. Brown's analysis of the RBANS test results to be ambiguous, the ALJ had a duty to develop the record further. See Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan, supra, 242 F.3d at 1150.

Based on the relevant record and for the reasons stated above, the Court concludes that the ALJ's finding that Dr. Brown provided no objective basis for the opined worsening in the claimant's condition, is not based on substantial evidence in the record as a whole. See Magallanes, supra, 881 F.2d at 750. Similarly, although Dr. Brown

indicated some reliance on plaintiff's self-reported symptoms, substantial evidence does not support the ALJ's finding that Dr. Brown "based her opinions largely on the claimant's self-report," as Dr. Brown indicated specifically and repeatedly her reliance on the RBANS test. The Court has not been directed to any evidence suggesting that the RBANS test is not an objective test which thus formed an objective basis for Dr. Brown's opinions.

For the reasons discussed and based on the relevant record, the Court concludes that the ALJ failed to provide specific and legitimate reasons for her failure to credit fully Dr. Brown's opinions and failed to discuss significant probative evidence. Lester, supra, 81 F.3d at 830-31; Vincent, supra, 739 F.2d at 1394-95. Because of the ALJ's failure to discuss the medical evidence properly, this matter should be reversed and remanded to the Commissioner for further administrative proceedings.

2. The lay testimony of plaintiff's father, Mr. Charles Harris ("Mr. Harris") should be evaluated anew following remand of this matter.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," see 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources," see 20 C.F.R. § 404.1513 (d)(4), and "other sources" such as nurse practitioners and chiropractors, who are considered other medical sources, see 20 C.F.R. § 404.1513 (d)(1). See also Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)); Social

Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5, 2006 WL 2329939. An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." Turner, supra, 613 F.3d at 1224 (*citing* Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)); see also Van Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because "[i]n determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).

The Ninth Circuit has characterized lay witness testimony as "competent evidence," noting that an ALJ may not discredit "lay testimony as not supported by medical evidence in the record." Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009) (*quoting* Van Nguyen, supra, 100 F.3d at 1467) (*citing* Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996)). In addition, testimony from "other non-medical sources," such as friends and family members, see 20 C.F.R. § 404.1513 (d)(4), may not be disregarded simply because of their relationship to the claimant or because of any potential financial interest in the claimant's disability benefits. Valentine v. Comm'r SSA, 574 F.3d 685, 694 (9th Cir. 2009).

Here, the ALJ discussed the evidence supplied by plaintiff's father, Mr. Harris, and provided reasons for her failure to credit this evidence fully (see Tr. 21). One of the reasons relied on by the ALJ was her finding that the report by Mr. Harris was "inconsistent with the objective medical evidence" (id.). However, the Court already has

determined that the ALJ failed to evaluate properly the medical evidence, see supra, section 1. Therefore, the lay evidence supplied by Mr. Harris should be evaluated anew following remand of this matter.

   3.  <u>This matter should not be reversed with a direction to award benefits</u>.

The Ninth Circuit has put forth a "test for determining when evidence should be credited and an immediate award of benefits directed." <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178, 2000 U.S. App. LEXIS 38646 at **17 (9th Cir. 2000). It is appropriate where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Harman</u>, supra, 211 F.3d at 1178 (*quoting* <u>Smolen v. Chater</u>, 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, there is significant probative evidence in the record that the ALJ did not discuss and perhaps did not understand, and it is not clear from the record that the ALJ would be required to find plaintiff disabled were Dr. Brown's opinions credited (<u>see</u> Tr. 76-79 (vocational expert testifies as to results of hypothetical cognitive *and* manipulative limitations)). See <u>Harman</u>, supra, 211 F.3d at 1178 (*quoting* <u>Smolen</u>, supra, 80 F.3d at 1292). Following remand, the ALJ likely will develop the record further regarding the

objective verses subjective nature of the RBANS test as well as plaintiff's specific RBANS test results.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting* Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing* Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980))).

Therefore, remand is appropriate to allow the Commissioner the opportunity to consider properly all of the medical evidence as a whole and to incorporate the properly considered medical evidence into the consideration of the lay evidence, as well as plaintiff's credibility and residual functional capacity. See Sample, supra, 694 F.2d at 642.

CONCLUSION

The ALJ failed to provide legitimate reasons for her failure to credit fully the opinions from examining doctor, Dr. Brown, regarding plaintiff's cognitive and social limitations following his traumatic brain injury. In doing so, the ALJ failed to discuss significant probative evidence supporting the examining doctor's opinions and relied on findings not based on substantial evidence in the record as a whole.

Based on these reasons and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** to the Commissioner for further

consideration pursuant to sentence four of 42 U.S.C. § 405(g).  **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on June 8, 2012, as noted in the caption.

Dated this 17th day of May, 2012.

J. Richard Creatura
United States Magistrate Judge